IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES SCHWEITZER, : | |
|     Plaintiff, : | |
| : | |
| : | CIVIL ACTION |
| : | No. 2:20-cv-04436-AB |
| v. : | |
| : | |
| DIRECT ENERGY, LP, : | |
|     Defendant. : | |

### MEMORANDUM

Plaintiff Charles Richard Schweitzer alleges that Defendant Direct Energy, LP ("Direct Energy") harassed him continuously with advertisement phone calls in spite of his requests to stop and his presence on the Do Not Call List. Mr. Schweitzer brings a federal claim for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, state law claims for Intentional Infliction of Emotional Distress and Invasion of Privacy, and a claim for damages. Defendant Direct Energy argues that it is not responsible for the phone calls. I exercise jurisdiction pursuant to 28 U.S.C. § 1331.

Direct Energy moves for summary judgment. I will grant in part and deny in part Direct Energy's motion for summary judgment.

### I.  BACKGROUND

Charles Schweitzer is a resident of Bensalem, Pennsylvania. *See* ECF No. 20-1 at ¶ 5. He is not a customer of Defendant Direct Energy. *Id.* at ¶ 93. In 2003, Mr. Schweitzer added his home phone number to the National Do Not Call Registry. *Id.* at ¶ 8. Beginning in September 2019, Mr. Schweitzer received numerous phone calls from Direct Energy. *Id.* at ¶ 10. He estimates that there were between 80 and 120 calls. *See* ECF No. 28-7 at ¶ 21. He has a record of

40 or 50 of these calls. *See* ECF No. 20-2 at p. 18-19; 21. Every time Mr. Schweitzer answered these calls, he spoke to the same few people, including one woman named Deborah who called numerous times, demanding to speak with the person who pays the PECO bill. *Id.* at p. 22-23. Mr. Schweitzer described the callers as belligerent, rude, and intimidating. *Id.* at p. 82-83. The calls were often made when Mr. Schweitzer was sleeping, which woke him up. *Id.* at p. 85-86. Mr. Schweitzer's caller ID identified the calls as coming from both "Westlake" and "Huntingdon Valley." *Id.* at p. 27-28. Some of the callers stated they were calling "on behalf of Direct Energy," and others said, "we are Direct Energy." *See* ECF No. 28-7 at ¶ 3. Some of the calls were made using artificial or prerecorded voices. *See* ECF No. 20-2, at p. 25.

Mr. Schweitzer did not answer all of the calls, but he could see by looking at his Caller ID that they were placed by Direct Energy. *See* ECF No. 20-2 at p. 27-28. When Mr. Schweitzer's answering machine picked up, which happens after the fifth ring, the caller would hang up. *Id.* Mr. Schweitzer recorded a number of the phone calls. *See* ECF No. 29. In these recordings, multiple callers identified themselves as calling from Direct Energy. *Id.* When Mr. Schweitzer answered the phone during the recording, there were often long pauses before the caller spoke, and sometimes no response from the caller at all. *Id.* It is not clear from the recordings whether or not the callers are live or prerecorded voices. *Id.*

## II. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving

party.  Id.  In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The materials in the record that parties may rely on include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  In opposing a motion for summary judgment, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions."  *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.    DISCUSSION

Mr. Schweitzer contends that Direct Energy violated the Telephone Consumer Protection Act by repeatedly placing harassing phone calls. He argues also that Direct Energy is liable for

Intentional Infliction of Emotional Distress and Invasion of Privacy. Direct Energy argues that Mr. Schweitzer cannot establish the required elements of these claims.

### A. The Telephone Consumer Protection Act

The Telephone Consumer Protection Act (TCPA) protects consumers from excessive "robocalls" to private residences, "which Congress viewed as a nuisance and an invasion of privacy." *Leyse v. Bank of America Nat'l Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015). Among other things, the TCPA prohibits calls to any subscriber on the national Do Not Call Registry. 47 U.S.C. § 227(c)(3)(F); *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 157 (3d Cir. 2020). Mr. Schweitzer alleges that Direct Energy violated the TCPA by:

1. Initiating telephone calls to Plaintiff's residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, in violation of 47 C.F.R. § 64.1200(a)(3);
2. Initiating telephone calls to Plaintiff and failing to transfer to a live sales agent within two seconds of Plaintiff's completed greeting, in violation of 47 C.F.R. § 64.1200(a)(7)(i);
3. Failing to disconnect unanswered telemarketing calls to Plaintiff prior to at least 15 seconds or four (4) rings, in violation of 47 C.F.R. § 64.1200(a)(6); and
4. Failing to abide by the Do Not Call Registry in violation of 47 C.F.R. § 64.1200.

Whether or not Direct Energy initiated or authorized the phone calls is a required element for each of Direct Energy's alleged violations of the TCPA. *See* 47 C.F.R. § 64.1200(a)(3), (6), and (7). Direct Energy argues that there is no proof it initiated or authorized the phone calls. *See* ECF No. 20 at ¶ 8. Based on the evidence presented, including Mr. Schweitzer's testimony and recordings of the phone calls, there is a dispute of material fact as to whether Direct Energy

initiated or authorized the phone calls.

Direct Energy also argues that the record contains no evidence that the calls at issue used an artificial or prerecorded voice. *See* ECF No. 20 at ¶ 9. Based on the evidence presented, there is a dispute of material fact as to whether a prerecorded voice was used. *See* ECF No. 20-2, at p. 25. Direct Energy argues further that there is no evidence in the record to prove whether or not calls were transferred to a live agent within two seconds of Mr. Schweitzer's completed greeting. *See* ECF No. 20 at ¶ 11. On multiple calls recorded by Mr. Schweitzer, more than 2 seconds elapse between when Mr. Schweitzer answers the phone and the caller's response. *See* ECF No. 29.  Finally, Direct Energy argues that Mr. Schweitzer has not proven whether unanswered telemarketing calls to Plaintiff were disconnected prior to at least 15 seconds or four (4) rings. *See* ECF No. 20 at ¶ 10. Based on the evidence presented, there is a dispute of material fact as to whether unanswered telemarketing calls to Plaintiff were disconnected prior to at least 15 seconds or four (4) rings. *See* ECF No. 20-2 at p. 27-28. Because genuine disputes of material fact exist, Direct Energy is not entitled to judgment as a matter of law on any of Mr. Schweitzer's TCPA claims. Therefore, I will deny summary judgment as to Mr. Schweitzer's TCPA claims.

### B. Intentional Infliction of Emotional Distress

Direct Energy argues that Mr. Schweitzer's IIED claim must be dismissed because "the record contains no medical evidence whatsoever that Schweitzer suffered emotional distress." *See* ECF No. 20 at ¶ 13. Pennsylvania's IIED claim has four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). Severe distress requires "objective proof, with competent

medical evidence." *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996). An allegation of injury is not sufficient to survive a motion for summary judgment absent medical evidence to support the claim. *Id.* at 178; s*ee also Wardlaw v. Newsome*, 2015 WL 1312028 at *3 (E.D. Pa. Mar. 23, 2015) (granting summary judgment on an IIED claim despite photographs of alleged bruising, because the plaintiff "has not produced any medical evidence to support any of those injuries"). Mr. Schweitzer also did not seek treatment for mental anguish resulting from these calls, so he has no medical evidence to support his claim. *See* ECF No. 20-2 at p. 85. Mr. Schweitzer has not presented evidence of any physical or emotional injury as a result of the phone calls.

Because Mr. Schweitzer does not have competent medical evidence, he cannot succeed on his IIED claim. *Hunger*, 670 A.2d at 177-78.  Therefore, I will grant summary judgment as to Mr. Schweitzer's IIED claim.

### C. Invasion of Privacy

Tortious invasion of privacy in Pennsylvania requires intentional intrusion into a person's solitude or seclusion, in a way that would be "highly offensive to a reasonable person." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620 (3d Cir. 1992) (quoting the Restatement (Second) of Torts § 652B). Direct Energy argues that it cannot be liable for invasion of privacy because there is no evidence that it initiated or authorized the alleged phone calls. Because there is a dispute of material fact as to whether or not Direct Energy initiated or authorized the phone calls, I will deny summary judgment as to Mr. Schweitzer's claims for invasion of privacy.

### D. Damages

Direct Energy argues that Mr. Schweitzer's claim for damages should be dismissed because there is no evidence that it initiated or authorized the alleged phone calls *See* ECF No.

20 at ¶ 17. Direct Energy also objects to Mr. Schweitzer's claim for punitive damages in particular. *See* ECF No. 20 at ¶ 16. Punitive damages are appropriate when conduct is "malicious, wanton, reckless, willful or oppressive." *Walker v. May Dept. Stores Co.*, 83 F. Supp. 2d 525, 529 (E.D. Pa. 2000) (quoting *Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989)). Because there are disputes of material fact as to whether or not Direct Energy initiated or authorized the phone calls, and if so, whether such actions were malicious, wanton, reckless, willful, or oppressive, I will deny summary judgment as to Mr. Schweitzer's claims for damages.

## IV.   CONCLUSION

I will grant Direct Energy's Motion for Summary Judgment as to Mr. Schweitzer's Intentional Infliction of Emotional Distress claim. Because genuine disputes of material fact exist, I will deny Defendant's Motion for Summary Judgment as to Mr. Schweitzer's remaining claims.

s/ANITA B. BRODY, J.

ANITA B. BRODY, J.

November 10, 2021